Pearson,
 
 J.
 

 Smith Dozier died, having his domicil in the State of South Carolina, on the 10th of December, 1831, leaving him surviving the plantiff, who was his only child, and his widow, who is one of the defendants.
 

 The widow was appointed administratrix, and sold much of the property, and paid off the debts, and
 
 then removed to this
 
 State, bringing her only child, the- plaintiff. She afterwards married the other defendant, and the object of the bill is to have an account of the estate of Smith Dozier. Among other things, the bill charges that the intestate owned a slave named Sandy, who is still in the possession of the defendants, and is of great value, being a “ first rate tanner and it is insisted that Sandy, together with the profits and hires that have been or ought to have been made, form a part of the estate of the intestate, for which the defendants are bound to account.
 

 The bill also charges that the intestate purchased from Mary Bright, the mother of his wife, an undivided share in many slaves, or that he acquired a right to them, as husband
 
 *153
 
 of the defendant Elizabeth, by reducing them into possession in his life. A discovery is asked in regard to these slaves, and it is insisted that they, or the price of such as have been sold form a part of the estate for which the defendants are bound to account.
 

 The defendants submit to a decree for an account of the estate of Smith Dozier, but they say that in regard to the slave Sandy, he was sold by the administratrix at public sale and purchased by her. That the sale was in all respects regular, and the price a fair one; and that by the law of South Carolina, an administrator may be a purchaser at his own sale, provided it is regular, and he pays a fair price. In regard to the slaves conveyed by the deed of Mary Bright, the defendants insist that it was a gift to Elizabeth and her other children, of their mother’s interest and right to the estate of their father; and that as her husband died before the estate was settled and the property divided, the right survived to her.
 

 There was replication and commissions, and after taking much testimony, the cause was removed to this Court.
 

 Upon the opening of the case, it was suggested to the defendants’ counsel (the plaintiff having no counsel in this Court) that as the defendants submitted to a decree for an account, there ivas at this stage of the proceeding no issue or question for the Court to act on ; and that the matter in regard to Sandy and the slaves derived from Mrs. Bright would properly come up. upon exceptions to the report. The Counsel, however, insisted, that they were entitled to have the question now heard, so that the decree for an account might be made with instructions in regard to these matters; and they pressed it on the ground, that a declaration of the facts and of the opinion of the Court thereon would save much trouble before the master.
 

 We have considered„the subject, and have come to the conclusion, that according to the course of the Court, we cannot how make any declaration, and the decree must be in the
 
 *154
 
 usual form to take an account of tlie'estate of the intestate tliat did or ought to have come to the hands of his adminis-tratrix.
 

 The plaintiff, upon the hearing, is required to make such proof only as will entitle him to the decree he asks for in the first instance, Adams’ Eq. In our case the plaintiff asks for a decree to account. The defendant submit to it. So no proof was necessary, and after replication-a decree for an account ought to have been made as of course. If, therefore, we should at this stage of the case, make a declaration in regard to the slave Sandy, or the slaves derived from Mrs. Bright, the plaintiff might well say, “I am taken by surprise. I prepared only such proof as was necessary to entitle me to a decree for an account, and that proof wassupplie 1 by the answer. When the matter comes before the master, I hope t<> be prepared to show what belonged to (he estate ol the intestate and should be a charge, and also to meet any false claim ol discharge.”
 

 It will be seen at once, that at this stage of the case, the only question is, are the defendants bound to account? Ho other question is now presented, and of course no other question ought now to be decided. For instance, a bill charges a partners’iip or an agency, and prays for an account — the relation ol partner or agent is denied — at that stage of the case the fact of l he alleged relation is the only question. Or, suppose the bill charges that the defendant is the administrator of the plain! iffs father, and is bound to account, the relation being admitted, there can, at that stage of the case, be no other question.
 

 The rule is this: any matter which has a bearing upon the the right >fthe plaintiff to a decree for an account, com s up at the hearing, when the decree for an account is asked for — ■ but a matter of charge, i. e., what does or does not form a part of the fund or of discharge, cannot then be gone into, and comes up regularly by exception 'to the report of the
 
 *155
 
 master. Law vs. Hunter, 1 Russ. 101, id. 107 — Tomlin vs. Tomlin, 1 Hare 245. The propriety of this rale of practice is so obvious, that it seems liardly worth while to say much about it; but for the sake of those members of the profession \v hose clients suffer by an unnecessary delay in this stage of the case, we extract and adopt the language of Daniel in his Chancery Practice 2 vol. 997. “In the case of a plaintiff, it is sufficient to prove so much only of the allegations in the bill as is necessary to entitle him to a decree. Thus, when the suit is for an account, all the evidence necessary to be read at the hearing is, that which proves the defendant lo be an
 
 accounting party,
 
 and then the. decree to account follows of course. Any evidence as to the particular items of an ac* count, however useful it may be in a subsequent stage of the cause, would be irrelevant at the original hearing. For this reason, when the suit is against an administrator, all that is necessary to prove on the part of the plaintiff is, that the defendant fills and has ac ed in that character.”
 

 It is suggested, that as the domicil of the intestate wras in South Carolina, the plaintiff as next of kin, has no right in this State to call for an account, and that the suit ought to have been in the name of an administrator appointed in this State. We have considered the question, and lliink it clear that, as the intestate, at the time of his death had no effects in this Stale, administration could not be taken hete, and consequently that the suit is well brought, in the name of the next of kin, who is entitled to lave the same rel of in our court that he Could have had in the court of his father’s domicil, but for the accident of the removal of the parties to our State. The removal and its consequences did not, in any point of view, originate a right, on the part, of the
 
 intadate
 
 upon which our Courts could grant, letters of administration. Hie injury, if any, was done to the plaintiff or next of kin.
 

 The plaintiff is entitled to a decree for an account.
 

 Per Curiam. Decree accordingly.