T. C. CROW, ADMINISTRATOR OF E. B. McCULLEN, DECEASED, v. CECIL McCULLEN AND EDNA McCULLEN McCOLMAN.

(Filed 9 April, 1952.)

**1. Bankruptcy § 10—**

Whether an indebtedness scheduled by a bankrupt is within the statutory exceptions of debts dischargeable must be determined by the original character of the debt rather than the particular form of the judgment by which the debt is established.

**2. Bailment § 1—**

Ordinarily one who receives a specific fund for safekeeping may not be classed as an agent, but rather as a bailee.

**3. Bankruptcy § 10—Original debt held not based on willful misappropriation of funds or willful and malicious injury within meaning of Bankruptcy Act.**

An uncle delivered to his nephew an envelope containing a sum of money with direction to the nephew to place it in a safety deposit box in the nephew's name, and if any of the money was needed by the uncle to use it for that purpose, and "if anything happened" to the uncle and any money was left, to divide it among the nephew, a niece, and the nephew's wife. Upon the death of the uncle the money was divided as directed. Thereafter the uncle's administrator recovered a judgment for the money as having been appropriated and converted by those among whom it was divided. This judgment was listed in the schedule of indebtedness in the nephew's petition in bankruptcy. *Held:* The debt evidenced by the judgment was barred by the discharge in bankruptcy, since the original character of the debt lacked the elements of fraudulent conversion or willful and malicious injury or such unconscionable conduct as would bring it within the category of a debt excepted by the Bankruptcy Act. 11 U.S.C.A. 35.

APPEAL by plaintiff from *Carr, J.,* December Term, 1951, of DUPLIN. Affirmed.

This was a suit to renew a judgment. The defendants resisted on the ground that plaintiff's action was barred by defendants' discharge in bankruptcy. The material facts relating thereto were not controverted.

On 18 April, 1939, E. B. McCullen, plaintiff's intestate, handed to defendant Cecil D. McCullen, his nephew, an envelope containing $3,500 in currency with instructions "to place the money in a safe deposit box in the name of Cecil D. McCullen, and if the money was needed by E. B. McCullen to spend it on him, and if anything happened to E. B. McCullen and any money was left, to divide it among Cecil D. McCullen, Edna McCullen McColman and Lillie O. McCullen." One week later, 25 April, 1939, E. B. McCullen died intestate. Thereafter the money was divided among those named.

In 1941 the administrator of E. B. McCullen sued defendants to recover this money on the ground that it belonged to his intestate, and that defendants had unlawfully appropriated it. These allegations were denied by the defendants. Jury trial was waived and judgment rendered for plaintiff based on the finding that E. B. McCullen had not made delivery of this money to Cecil D. McCullen with intent to transfer right of property and possession; that Cecil D. McCullen was agent of E. B. McCullen; and that after the death of E. B. McCullen the defendants "appropriated and converted" the money to their own use.

On 24 November, 1949, Cecil D. McCullen and Edna McCullen McColman filed petition in bankruptcy in accordance with the bankruptcy statutes, listing in the schedule of indebtedness plaintiff's judgment. The defendants were duly adjudicated bankrupts. Thereafter the petition of Cecil D. McCullen for discharge in bankruptcy was opposed by plaintiff on the ground that Cecil D. McCullen was the agent of his intestate E. B. McCullen, and that he appropriated and converted to his own use money which rightfully belonged to the estate of E. B. McCullen. The present action was begun 14 December, 1950. The referee in bankruptcy entered order 9 February, 1951, discharging Cecil D. McCullen from all debts and claims which were made provable against his estate by the Bankruptcy Act, except such debts as were by the Act excepted from the operation of a discharge in bankruptcy.

Upon the facts agreed judgment was rendered in favor of defendants, and plaintiff excepted and appealed.

*Butler & Butler for plaintiff, appellant.*
*J. Faison Thomson and Rivers D. Johnson for defendants, appellees.*

DEVIN, C. J. The Federal Bankruptcy Act declares that a discharge in bankruptcy shall have the effect of releasing the bankrupt from all his provable debts, with certain specific exceptions. Among these are "(2) liabilities . . . for wilful and malicious injuries to the person or property of another," and debts which "(4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity." 11 U.S.C.A. 35.

The appellant relies upon these exceptions in the Act as grounds for denying release of the defendants from liability for plaintiff's debt. He calls attention to the judgment of 1941 as having been based on findings that Cecil D. McCullen was the agent of E. B. McCullen, and that he and his codefendants appropriated and converted the money to their own use, and presents the view that the appropriation and conversion under the circumstances constituted a "wilful and malicious" injury to the property of the intestate, and that the misappropriation occurred while Cecil D. McCullen was acting in the fiduciary capacity of agent. On the other hand, the defendants' position is that the original character of the transaction upon which the judgment sued on was rendered does not show a fiduciary relationship, or, if it be so construed, that the facts indicate the instructions of the donor were complied with, and negative the suggestion of willful or malicious injury, or misappropriation while acting in the capacity of agent.

Whether an indebtedness scheduled by a bankrupt is within the statutory exceptions from the operation of a discharge in bankruptcy must be

determined by the original character of the debt rather than the particular form of the judgment by which the debt was established.

This principle is supported by judicial authority. "The original character of the debt is not lost by its reduction to judgment." *Trust Co. v. Parker,* 232 N.C. 512 (514), 61 S.E. 2d 441. "The rendition of a judgment upon an obligation does not change the character of the indebtedness." *Fidelity & Casualty Co. v. Golombosky,* 133 Conn. 317, 170 A.L.R. 361. "The debt on which this judgment was rendered is the same debt that it was before." *Boynton v. Ball,* 121 U.S. 457. The nature of the transaction between the parties at the inception of the debt is determinative of whether it was one created by the fraud or misappropriation of the bankrupt while acting in a fiduciary capacity or was a debt barred by discharge in bankruptcy. As was said by *Justice Barnhill* in *Trust Co. v. Parker,* 225 N.C. 480, 35 S.E. 2d 489: "The fiduciary character of the debt does not depend upon its form but the manner of its origin and the acts by which it is incurred, *Simpson v. Simpson, supra* (80 N.C. 332), and the Court will look behind the judgment to discover the original character of the liability. *Guernsey v. Napier,* 275 Pac. 724." Ordinarily one who receives a specific fund for safekeeping may not be classed as an agent, but rather as a bailee. *S. v. Eurell,* 220 N.C. 519, 17 S.E. 2d 669; *Lewis v. Shaw,* 106 N.Y.S. 1012.

Whatever may have been the motive of E. B. McCullen, childless and in trouble in the courts over a charge of incest, the fact remains that he turned over to his nephew a sum of money with specific instructions to place it in a safety deposit box in the nephew's name "and, if the money is needed by E. B. McCullen, to spend it on him, and if anything happened to E. B. McCullen and any money was left" to divide it among the defendants who were his nephew, his niece, and his nephew's wife. No money was needed by or expended on E. B. McCullen, but something did happen to him, for, whether anticipated or not, he died one week later. Those whom in the event anything happened to him he stated he wished to have the money accordingly divided it. Two years later the nephew and niece were sued by the administrator. It was not alleged that the money was given to defendants by E. B. McCullen with intent to defraud his creditors. That was not the basis of the suit and we are not concerned with it here. The judgment was rendered on the ground that this money was not a gift but that E. B. McCullen retained dominion over it and did not make delivery of it with intent to transfer to the defendants right of property therein. In other words, the theory of the judgment was that the money was at all times the property of E. B. McCullen and under his control. However that may be, the judgment established a debt in favor of the administrator which may not now be denied.

A different question is presented under the Bankruptcy Act. Looking back of the judgment into the original transaction and the circumstances of the delivery of the money to Cecil D. McCullen, was the debt one which should be regarded as coming within the exceptions in the Bankruptcy Act, or does the discharge in bankruptcy now constitute a bar to a suit thereon?

Consideration of all the facts here presented leads us to the conclusion that the transaction of the delivery of this money whether a gift, a bailment, or a trust, and its acceptance by defendants, does not seem to involve moral turpitude on the part of Cecil D. McCullen in the sense of a willful misappropriation of funds entrusted to him, nor should it properly be held to constitute a willful and malicious injury to the property of the intestate. The defendants may not without reason have supposed the money was intended for them. The transaction is lacking in the elements of a fraudulent conversion or a willful and malicious injury, or such unconscionable conduct as would bring it within the category of a debt excepted by the Bankruptcy Act from the operation of a discharge in bankruptcy.

The judgment of the court below holding on the facts agreed that the suit on the debt evidenced by the judgment was barred by the discharge in bankruptcy is

Affirmed.