In re Fred C. MECHLING and Connie W. Williams–Mechling, Debtors.

Fred C. Mechling and Connie W. Williams–Mechling, husband and wife, Plaintiffs,

v.

Bonner County, Office of County Assistance, Defendants.

Bankruptcy No. 01–21562.

Adversary No. 02–6039.

United States Bankruptcy Court, D. Idaho.

Sept. 26, 2002.

Catherine L. Dullea, Sandpoint, Idaho, for Plaintiffs.

John R. Topp, Bonner County Prosecuting Attorney Office, Sandpoint, Idaho, for Defendant.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Bankruptcy Judge.

### I. INTRODUCTION

In this case, the Court once again considers issues related to the statutory lien provided Idaho counties when they fund medical benefits for indigent citizens. Here, Fred and Connie Mechling ("Debtors" or "Plaintiffs") raise concerns over the post-bankruptcy effect of a lien obtained by Bonner County ("County" or "Defendant").

At a pretrial conference, the Court was advised that no factual matters were in dispute and that the issues raised by the pleadings could be submitted on stipulated facts and briefing. Those materials were filed in due course, and the Court has considered the submissions and analyzed the arguments of the parties and relevant authorities. This decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

### II. FACTS

By virtue of the parties' Stipulated Facts, Doc. No. 6 (the "Stipulation") and the pleadings of record herein, the underlying situation can be readily summarized.

On February 15, 2000, Fred Mechling incurred necessary medical services from Sacred Heart Hospital and from Northwest MedStar.

On August 14, 2000, Bonner County recorded a "Notice of Lien and Application for Medically Indigent Benefits" (the "Notice") in the County's real property records as Instrument No. 568332. *See* Stipulation, at Exhibit "A." The Notice stated:

> Pursuant to I.C. 31–3501 et seq. the Board of County Commissioners of Bonner County hereby claim a statutory lien on behalf of Bonner County and/or Catastrophic Health Care Costs Program in an unliquidated amount against all real and/or personal property of *MECHLING, FRED C. & CONNIE WILLIAMS*, Husband and Wife, whose last known address is *P.O. BOX 1132, SAGLE ID 83860*. Said lien arises from necessary medical services which were rendered to *MECHLING, FRED C.* which service commenced on the *15TH day of FEB. 2000*.

The County's statutory lien [1] arises under and is governed by Idaho Code § 31–3504(4):

---

1. The lien is a "statutory lien" by virtue of the definition of § 101(53). *See In re Matlock,*

Case No. 02–40793 (Bankr.D.Idaho Sept. 17,

(4) Upon application for financial assistance pursuant to this chapter an automatic lien shall attach to all real and personal property of the applicant and on insurance benefits to which the applicant may become entitled. The lien shall also attach to any additional resources to which it may legally attach not covered above. The lien created by this section may be, in the discretion of the board, perfected as to real property and fixtures by recording, in any county recorder's office in this state in which the applicant and obligated party own property a notice of application for medical indigency benefits on a uniform form agreed to by the Idaho association of counties and the Idaho hospital association, which form shall be recorded as provided herein within thirty (30) days from receipt of an application, and such lien, if so recorded, shall have a priority date as of the date the necessary medical services were provided. The lien created by this section may also be, in the discretion of the board, perfected as to personal property by filing with the secretary of state within thirty (30) days of receipt of an application, a notice of application in substantially the same manner as a filing under chapter 9, title 28, Idaho Code, except that such notice need not be signed and no fee shall be required, and, if so filed, such lien shall have the priority date as of the date the necessary medical services were provided.

The parties agree the Notice was properly recorded in a timely manner in the

Bonner County real property records. Furthermore, the County admits it did not file any notice with the Idaho Secretary of State, and thus stipulates that it has no lien against the Debtors' personal property.

By filing and recording its Notice in the County real property records, the County perfected its statutory lien as to the Plaintiffs' real property and fixtures then in existence. This result flows from the language of the statute: "The lien created by this section may be ... perfected as to real property and fixtures by recording, in any county recorder's office in this state in which [county] the applicant and obligated party own property ...." However, at the time of the recording of the Notice, the Plaintiffs did not own any real property in Bonner County. Nor did the Plaintiffs acquire any real property in Bonner County prior to the time they filed their bankruptcy petition on November 7, 2001.[2]

## III. DISCUSSION AND DISPOSITION

The Plaintiffs filed an adversary complaint, seeking a determination that the "value" of the County's lien on real property is "$0.00" and a finding that the County has no lien against the Plaintiffs' personal property. The Plaintiffs also seek a declaration that the County may not attempt to attach its lien to any real property obtained by the Plaintiffs in the future.[3]

### A. Value of the County's real property lien

■ Section 506(a) of the Code provides in pertinent part:

---

2002) (noting that the medical indigency lien is a statutory lien).

**2.** Though not part of the Stipulation, the petition date and the disclosures of the Debtors' assets in their schedules in Case No. 01–21562 are matters judicially noticed by the Court. Fed.R.Evid. 201.

**3.** An adversary proceeding is appropriate "to determine the validity, priority, or extent of a lien or other interest in property," Fed. R. Bankr.P. 7001(2), or "to obtain a declaratory judgment" relating to a Rule 7001(2) issue. Fed. R. Bankr.P. 7001(9). Thus, the Court concludes the three claims for relief are properly before it.

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

On the date of the filing of the petition for relief, the Plaintiffs owned no real property in Idaho.[4] Since the estate had no interest in Idaho real property, the County as a § 506 creditor could have no "interest in the estate's interest in such property." Reserving for the moment the question of whether there could be any lien at all under these circumstances, a question to which the Court will return, it is nonetheless clear that the Plaintiffs' request that the "value" of the County's lien under § 506(a) be placed at zero is well taken.

### B. Lack of personal property lien

Given the County's failure to file notice of the lien with the Idaho Secretary of State, and given the County's concession in the Stipulation, it is not difficult to determine that the County lacks any enforceable lien in any of the Plaintiffs' personal property. The first two questions are thus answered.

**4.** The schedules reflect that the Debtors have a small parcel of real property in Texas. The Defendant has not argued that this property is subject to the attachment provisions of the statute or that, if subject to § 31–3504(4), the lien could be "perfected" in this property by

### C. Post-petition effect of the County's lien

■ The County maintains that its statutory lien on real property was validly created and perfected prior to bankruptcy, survived the Debtors' discharge and will remain effective in the event the Debtors ever acquire real property in Bonner County in the future. The Plaintiffs insist, just as strenuously, that the statutory lien should not be given post-bankruptcy or post-discharge effect.

Initially, the parties disagree on the scope of § 31–3504(4) and whether it captures after-acquired property. Although there is language in the Idaho Code that arguably supports both constructions of the lien, the Court need not (and today does not) decide whether, in a non-bankruptcy context, the lien would attach to "after-acquired" real property of an indigent citizen. Here, the question concerns the effect of the bankruptcy filing and the Debtors' discharge on the County's potential assertion of a lien on property which the Debtors might acquire post-petition.

■ Generally, a lien secured by property of the estate as of the time of filing remains on that property after filing and after discharge. It may be enforced against the property, *in rem*, after discharge and after closing. *Dewsnup v. Timm*, 502 U.S. 410, 417–18, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). A leading treatise on bankruptcy law summarizes:

Creditors are not prevented from postdischarge enforcement of a valid lien on property of the debtor that existed at the time of the entry of the order for

recording notice of the lien in Bonner County, Idaho. *See* § 31–3504(4) ("perfected as to real property and fixtures by recording, in any county recorder's office *in this state* in which the applicant and obligated party own property[.]") (emphasis added).

relief, if the lien was not avoided under the Code.

4 L. King, Collier on Bankruptcy ¶ 524.02[2][d], pp. 524–21 to 524–22 (rev. 15th ed.2001). Enforcement, however, is limited to recovery from the collateral because a debtor's personal liability is discharged. *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

The County places great reliance on cases such as *Handy v. Bonner County (In re Handy)*, 97.3 I.B.C.R. 79 (Bankr.D.Idaho 1997). *Handy* stated that "[v]alid, perfected liens that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt." 97.3 I.B.C.R. at 80 (citing *In re Cortez*, 191 B.R. 174, 177 (9th Cir. BAP 1995)). But the reliance is misplaced. Each case the County relies upon, and the cases located by the Court making similar statements, either expressly or implicitly involved a lien on property that actually existed on the date of the bankruptcy filing. None appear to have addressed a situation such as that in the case at bar.

The County argues that although the Debtors owned no property to which the lien could attach pre-bankruptcy, the medical indigency lien is an intentionally sweeping grant which provides a county with a lien against property acquired after the notice of lien is recorded. Thus, according to the County, the lien should be construed to survive bankruptcy and attach to post-petition property.

An example of a similarly expansive statutory lien can be found in 26 U.S.C. § 6321. Section 6321 creates a federal tax lien in favor of the Internal Revenue Service when a person liable to pay any tax neglects or refuses to pay the tax after demand. The tax lien arises in the amount of the unpaid taxes, interest and penalties and attaches to "all property and rights to property, whether real or personal" belonging to the taxpayer. The post-petition effect of this statutory tax lien has been the subject of several decisions, virtually all of which contradict the County's suggested approach.

As discussed in *Pansier v. United States*, 225 B.R. 657 (E.D.Wis.1998), the § 6321 lien arises at the time the assessment is made and continues until the liability is satisfied or becomes unenforceable by reason of lapse of time. The lien attaches to all the taxpayer's property and rights to property existing as of the moment of assessment. While the lien also attaches to property acquired subsequent to assessment, *Pansier* held that the lien will *not* attach to property or a right to property acquired by a debtor after a petition in bankruptcy has been filed and the underlying tax liability discharged as against the debtor personally. *Id.* at 661 (citing *United States v. Sanabria*, 424 F.2d 1121 (7th Cir.1970), and *Leavell v. United States (In re Leavell)*, 124 B.R. 535, 540 (Bankr.S.D.Ill.1991)).

As *Pansier* correctly noted, "IRS liens pass through bankruptcy unaffected as to property or rights to property [which were] attached *prior* to the petition's filing." *Id.* (citing *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), and *Isom v. United States (In re Isom)* 901 F.2d 744 (9th Cir.1990)) (emphasis in original). The Court concluded:

> In other words, while tax liens securing dischargeable debts do not attach to property acquired post-petition, bankruptcy does not change their effectiveness regarding property interests a debtor held pre-petition.

*Id.* Other decisions, such as *Deppisch v. United States (In re Deppisch)*, 227 B.R. 806, 809 (Bankr.S.D.Ohio 1998), and *In re*

*Thomas,* 231 B.R. 581, 585 (Bankr.E.D.Pa. 1999), reach the same conclusion.

In *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), the Supreme Court noted:

> An adjudication of bankruptcy, followed by a discharge, releases a debtor from all previously incurred debts, with certain exceptions not pertinent here; and *it logically cannot be supposed that the [Bankruptcy] [A]ct nevertheless intended to keep such debts alive for the purpose of permitting the creation of an enforceable lien upon a subject not existent when the bankruptcy became effective or even arising from, or connected with, preexisting property, but brought into being solely as the fruit of the subsequent labor of the bankrupt.*

292 U.S. at 243, 54 S.Ct. 695 (emphasis added).[5] The Court also observed that "[t]he law does not continue an obligation in order that there may be a lien, but only does so because there is one." *Id.* Consistent with the teaching of *Local Loan,* the several decisions cited above concluded that the IRS's statutory lien cannot attach to property acquired post-petition.

This approach is persuasive here. Like the § 6321 tax lien, the § 31–3504(4) medical indigency lien is a statutory lien. In a fashion similar to the IRS lien, the County's lien can reach all the Debtors' real and personal property if appropriately filed. However, the reach of both liens is circumscribed when a bankruptcy is filed. If properly asserted and perfected prior to bankruptcy, the liens are limited to the real or personal property that existed as of the petition date. "The lien does *not* attach to property or a right to property acquired by a debtor after a petition in bankruptcy has been filed and [where] the underlying tax liability is discharged against the debtor personally." *Pansier,* 225 B.R. at 661.

Providing analogous support is *North Carolina National Bank v. Wake Forest University Employees Federal Credit Union (In re Clowney),* 19 B.R. 349 (Bankr. M.D.N.C.1982), which addressed the effect of a pre-bankruptcy judgment lien on property acquired post-bankruptcy. *Clowney* held that, if the personal liability of the debtors was discharged before real property was acquired to which the lien could attach, a judgment lien on property acquired after the discharge could not be created. *Id.* at 352–53.[6]

A "lien" is defined as "a charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). Based on this definition, *Clowney* and other courts have determined that two things are necessary before an enforceable lien exists: an interest in property and a debt or obligation. *Clowney,* 19 B.R. at 352; *see also In re Thomas,* 102 B.R. 199, 201 (Bankr. E.D.Cal.1989); *In re Yates,* 47 B.R. 460, 462 (D.Colo.1985).

■ Recording a judgment creates a valid, enforceable judicial lien[7] if either (1) a *res* exists at the time the judgment is

---

**5.** That *Local Loan* addressed a consensual lien rather than a statutory lien is, for the purposes of today's decision, not significant.

**6.** Some decisions, like *Clowney,* state a lien is not created and does not exist because there was no property attached pre-petition. Other cases state the lien is not enforceable because, though created, it had not attached to a *res.* This Court finds that, at least as applied to the facts presented in the present case, these articulations reflect a distinction without a difference.

**7.** A judicial lien is defined in § 101(36); recording a judgment in Idaho real property records gives rise to such a lien. *See* Idaho Code § 10–1110.

recorded, or (2) assuming the lien may properly attach to after-acquired property, such property is obtained prior to bankruptcy. *Thomas,* 102 B.R. at 200–01; *Clowney,* 19 B.R. at 352. Though giving rise to a statutory lien rather than a judicial lien, the County's recording of its § 31–3504(4) Notice operates in essentially the same fashion as the recording of a judgment. Therefore, these decisions support the Debtor's position.

At and from the time the County recorded its Notice, and up to the time the Debtors filed bankruptcy, no *res* ever existed on which the lien could attach. Thus, the Court concludes that the County held no valid and enforceable lien in property of the Debtors in existence at the time of the bankruptcy filing.

The underlying obligation to the County was discharged in the Debtors' bankruptcy. Even if the statutory lien could attach to after-acquired property outside of bankruptcy, the absence of a *res* at filing and the effect of the bankruptcy discharge eliminates any *post hoc* attachment of the lien here. The Plaintiffs are entitled to the declaratory judgment they seek, establishing that the lien is not valid or enforceable post-bankruptcy. In order to avoid further dispute or potential violation of discharge, the County shall be required to release the lien of record.

**CONCLUSION**

For the reasons set forth, and upon the submissions of the parties herein, the Court finds and concludes that:

1. The § 31–3504(4) statutory lien of Bonner County was validly created and perfected as to any real property owned in Bonner County, Idaho, as of the date of the petition's filing, but that no such property then existed.

2. Such lien was not perfected or enforceable as to personal property by reason of lack of recordation of notice with the Idaho Secretary of State.

3. To the extent § 506(a) has application, the County's lien is valued as of bankruptcy at $0.00, *i.e.*, the County had and has no allowed secured claim.

4. The County's statutory lien is not valid, perfected or enforceable as to any real property acquired by the Debtors subsequent to the filing of the petition for relief. The County shall release its recorded Notice.

Counsel for the Plaintiffs shall submit a proposed form of judgment.